**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 11, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

| | |
|---|---|
| STATE OF NEVADA; JOHN HENDRIX,<br><br>Plaintiffs-Appellees,<br><br>and<br><br>COMMONWEALTH OF MASSACHUSETTS; COMMONWEALTH OF VIRGINIA; STATE OF CALIFORNIA; STATE OF DELAWARE; STATE OF FLORIDA; STATE OF ILLINOIS; STATE OF INDIANA; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF TENNESSEE; THE DISTRICT OF COLUMBIA, ex rel; UNITED STATES OF AMERICA,<br><br>Plaintiffs, | No. 13-1104 |
| v. | D. of Colo. |
| J-M MANUFACTURING COMPANY, INC.,<br><br>Defendant-Appellant,<br><br>and<br><br>FORMOSA PLASTICS CORPORATION, U.S.A.,<br><br>Defendant. | (D.C. No. 1:11-CV-01691-MSK-MJW) |

---

## ORDER AND JUDGMENT[*]

Before **LUCERO**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

This appeal arises from a collateral proceeding to a False Claims Act action against J-M Manufacturing (J-M) in federal court in California. During the course of litigation, the United States arranged to have Microbac Laboratories conduct tests on J-M pipe to determine whether it would intervene in the action. The government eventually declined to intervene. J-M subsequently served a subpoena on Microbac, seeking the test results, which the plaintiffs in the California case and the United States opposed.

Affirming the order of the magistrate judge to quash the subpoena, the district court held the test results constitute protected attorney work product under Rule 26 of the Federal Rules of Civil Procedure for which J-M has not demonstrated a substantial need. J-M appealed, and, exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.[1]

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We note the appellees' observation that "[d]iscovery orders entered during the course of litigation ordinarily are not 'final' under [§ 1291]." *In re Motor Fuel Temperature Sales Practice Litig.*, 641 F.3d 470, 482 (10th Cir. 2011) (alterations in original) (quotation omitted). But "[c]ourts have recognized an exception to the nonfinality of discovery orders where a district court, other than (continued...)

J-M Manufacturing is the world's largest manufacturer of polyvinyl chloride (PVC) pipe, which it sells to federal, state, and local governments for use in water and sewer systems. In 2006, a former J-M employee filed under seal a *qui tam* complaint pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.*, on behalf of various government entities in federal court in California. Several states and dozens of municipalities intervened in the action. The complaint alleged J-M falsely represented that its pipe was made and tested in conformity with certain industry standards. In November 2013, a federal jury found J-M liable for defrauding the government purchasers.

This appeal concerns a collateral proceeding in the District of Colorado. Shortly after the *qui tam* complaint was filed, the United States began investigating whether it would intervene in the action. As part of its investigation, the United States retained Microbac to test samples of J-M pipe at the company's Colorado laboratory. The United States and J-M negotiated over the samples of pipe to be tested and tests to be performed. Although J-M

[1](...continued)
the district court before which the main action is pending, issues an order denying discovery against a nonparty." *Hooker v. Cont'l Life Ins. Co.*, 965 F.2d 903, 904–05 (10th Cir. 1992). We have held that "[t]he key question . . . is whether the appealing party has any means, other than an immediate appeal, to obtain appellate review." *Id.* at 905. Unlike in *Hooker*, the order denying discovery in this case is immediately appealable because "the district court denying discovery and the district court considering the main action are [not] within the same circuit." *Id.*

supplied the United States with samples for testing, the J-M pipe samples the United States submitted to Microbac were different from those provided by J-M. After Microbac concluded its tests, the United States declined to intervene. J-M served Microbac with a subpoena, pursuant to Rule 45 of the Federal Rules of Civil Procedure, seeking the test results. The plaintiffs filed a motion to quash the subpoena, which the United States joined.

The magistrate judge partially denied the motion to quash. He reasoned that, because the plaintiffs were pursuing their fraud case on the theory that "every piece of pipe" J-M manufactured was nonconforming, J-M had a substantial need for any test results. The plaintiffs filed a motion for reconsideration, asserting their theory of the case was that, although J-M falsely represented that *all* of its pipes were manufactured and tested in conformity with industry standards, *some* of the pipes did not so conform. Under this theory, the plaintiffs would have to show only some of the pipes it purchased from J-M did not conform to industry standards. The district court in California issued a "Bifurcation Order" that clarified the plaintiffs were proceeding under such a theory, which it called a "lottery ticket" theory. Upon reconsideration, the magistrate judge reversed his previous order and quashed the subpoena. He concluded that, because a single test's results would have minimal probative value under a "lottery ticket" theory, J-M did not have a substantial need for the Microbac test results.

J-M appealed to the district court, which overruled J-M's objections and affirmed the magistrate judge's order. Because the test results may reveal attorney selective processes about which pipes to test or which tests to perform, the court concluded that the test results qualified as opinion work product, which our precedent suggests is absolutely privileged. In the alternative, the court held that, even if the test results constitute only ordinary work product, J-M had not demonstrated substantial need for them because the plaintiffs were proceeding under the "lottery ticket" theory in the California case.

We review de novo whether the district court employed the correct legal standard in resolving a discovery request. *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1164 (10th Cir. 2010). If it has employed the correct standard, we review a district court's discovery orders for abuse of discretion, reviewing factual findings for clear error and legal questions de novo. *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998). An "abuse of discretion will be found only where the trial court makes an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir. 1994).

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A); *see also Oklahoma v.*

*Tyson Foods, Inc.*, 262 F.R.D. 617, 626 (N.D. Okla. 2009) (defining ordinary work product as "materials generated by attorneys that are not opinion work product; *e.g.*, witness statements, investigative reports, photographs, diagrams, and charts prepared in anticipation of litigation or for trial preparation.").[2] Unlike opinion work product, ordinary work product may be discoverable if the requesting party has demonstrated substantial need for the materials and cannot otherwise obtain them without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(i), (ii). A substantial need exists where "the information sought is essential to the party's defense, is crucial to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues." *Nat'l Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000) (internal quotation marks omitted).

The district court did not abuse its discretion in declining to overrule the magistrate judge's quashing of the subpoena.[3] J-M argues that the district court abused its discretion because the court failed to consider new evidence that

---

[2] Opinion work product reveals "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Opinion work product is absolutely privileged. *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006).

[3] Although the district court also held that the test results qualify as opinion work product, we need not reach that issue because, regardless of how we classify the test results, J-M has fallen short of demonstrating substantial need for them.

allegedly showed the plaintiffs' abandonment of the "lottery ticket" theory of liability. In support of this argument, J-M points to the plaintiffs' agreement in the California case to produce all "non-privileged test results" pertaining to the durability of J-M pipe because of their potential relevance to the conformity or non-conformity of J-M pipe to industry standards. But this discovery agreement did not affect the theory of liability that the plaintiffs were pursuing. Conceding the potential relevance of J-M pipe test results in the context of a "lottery ticket" theory does not signal abandonment of the theory. Nor does a showing of "potential relevance" mean that J-M has demonstrated a substantial need for the test results—J-M must show the test results "carr[y] great probative value on contested issues." *Nat'l Cong. for Puerto Rican Rights,* 194 F.R.D. at 110. J-M has failed to carry this burden.

J-M also argues that it has a substantial need for the test results because they contradict the plaintiffs' allegations that J-M "cherry-picked" pipe samples for testing. One of the allegations in the complaint is that J-M cherry-picked PVC pipe samples for testing for the purpose of misrepresenting the quality of its pipes to government purchasers. Although J-M could conduct its own independent testing on randomly selected pipes, it asserts that the plaintiffs could

attack the credibility of any independent testing it arranges because J-M was involved in the testing process, even if only minimally.[4]

Potential attacks on the credibility of independent testing done in preparation for litigation are not sufficient to show a substantial need for an opposing party's test results. If we were to hold otherwise, this justification could conceivably apply to all tests conducted by parties in anticipation of litigation and would discourage parties from engaging in independent testing. Further, even if we could practically enforce this rule, the Microbac test results would have no probative value on the cherry-picking issue. The cherry-picking allegations concern J-M's process of selecting pipe samples for testing as part of its alleged fraudulent scheme. And because J-M did not select the pipes that Microbac tested, the test results would reveal nothing about J-M's pre-discovery selective process. Favorable test results would reveal only that some random samples of pipe met industry standards, which is fully consistent with the plaintiffs' theory and would not contradict their cherry-picking allegations.

We thus reject J-M's alternative theory of substantial need. Because J-M has failed to demonstrate a substantial need for the test results, we AFFIRM the judgment of the district court. We DENY the motions to supplement the record.

---

[4] At oral argument, J-M contended that the plaintiffs did in fact attack the credibility of its independent testing at trial in California during cross-examination.

ENTERED FOR THE COURT,

Timothy M. Tymkovich
Circuit Judge